272 So.2d 891

The **OLD SOUTHERN LIFE INSUR-ANCE CO.**

v.

Frank N. **ROBERTS** and Herman Z. Jarmon, Individually, and d/b/a Roberts Plastering Contractors.

**SC 16.**

Supreme Court of Alabama.

Nov. 16, 1972.

Rehearing Denied Feb. 22, 1973.

Patterson & Rinehart, Montgomery, Inzer, Suttle, Inzer & Pruett, Gadsden, for appellant.

Burns, Carr & Shumaker, and Robert H. King, and Thomas E. Davis, Gadsden, for appellees.

SOMERVILLE, Justice.

This is an appeal from a judgment of the Circuit Court of Etowah County, rendered on a jury verdict against the appellant, Old Southern Life Insurance Company (Old Southern) for $71,544.00, the face value of a life insurance policy, plus interest, issued on the life of James L. Roberts, deceased. Appellant's motion for a new trial being overruled, it pursues this appeal.

The pertinent facts are as follows: James L. Roberts, Frank N. Roberts and H. Zeke Jarmon were partners in a business known as Roberts Plastering Contractors. In February, 1970 Benny Roberts, the partnership's attorney, contacted Harold Mayo, the local agent for Old Southern, and told him that he wanted to obtain $66,000 additional life insurance on each of the three partners. There was to be a separate policy issued on each partner and the partnership was to be the beneficiary under all three policies. Three individual applications for insurance were sent to Old Southern in February of 1970. Medical examinations were required on each of the partners and James L. Roberts underwent his examination on March 20. Frank Roberts and H. Zeke Jarmon did not take their

medical examinations until the 22nd and 23rd days of April, respectively. The medical report on James L. Roberts indicated that he suffered from obesity and high blood pressure, and his premium was rated up by Old Southern. On April 2 James L. Roberts entered Baptist Memorial Hospital, the exact cause for his hospitalization not appearing in the record. On April 20 Roy Epperson, the president of Old Southern, in response to inquiries from Benny Roberts, called the latter's office to give him some figures on the amount of the premiums for all three policies. Benny Roberts got the information from his secretary and on April 22 went to see Harold Mayo to find out when the policies would be issued. Mayo placed a long distance telephone call to Epperson while Benny Roberts was still present in Mayo's office. Benny Roberts testified at trial that he overheard both sides of the telephone conversation between Mayo and Epperson and that Epperson had told Mayo, in regard to James L. Roberts, "he is covered, get the money". Benny Roberts also testified that Epperson indicated to Mayo that the policy on James L. Roberts could be picked up in Montgomery at any time if he were given the medical reports and specimens for Frank Roberts and Zeke Jarmon. Later in the day (April 22) Benny Roberts returned to Mayo's office and gave him a check in the amount of $1,491, covering the first quarterly premiums on all three policies. Then Mayo, as the licensed representative of Old Southern issued a company receipt for $848, which was the amount of the first quarterly premium on the policy covering James L. Roberts.

When Epperson took the stand he denied that he had told Mayo that James L. Roberts "is covered" and recited an entirely different version of the telephone conversation he had with Mayo on April 22. In substance, Epperson testified that he told Mayo that no policy could be issued until he had received the medical reports and specimens for all three partners. Harold Mayo was not called by either side to testify at the trial or by deposition.

James L. Roberts died on April 23 at around 11:30 A.M., the day following the above mentioned telephone conversation between Mayo and Epperson. Later that same day Benny Roberts, his sister Juanita Hagan, and Harold Mayo went to Montgomery, carrying with them the medical reports and specimens of Frank Roberts and Zeke Jarmon. They arrived at the home office of Old Southern in Montgomery after it had closed for the day. They spent the night in Montgomery and the next morning, April 24, Juanita Hagan, at her brother's instruction, took an envelope containing the medical reports and specimens to Epperson at the Old Southern office. Exactly what happened from that point was the subject of conflicting testimony from Juanita Hagan and Roy Epperson, but, suffice it to say, Juanita Hagan left the Old Southern office on the morning of the 24th carrying with her a policy of insurance on the life of James L. Roberts, No. 959–L, in the amount of $66,000 and dated on its face April 23, 1970. Thus the testimony concerning the exact time the subject policy was issued was in conflict.

After hearing the evidence presented the jury evidently determined that said policy on the life of James L. Roberts was in full force and effect at the time of his death and that consequently the plaintiff beneficiaries were entitled to recover of the defendant, Old Southern, the value of the policy plus interest.

■ Appellant's brief does not mention the first three assignments of error and accordingly these assignments are waived and will not be considered. Rule 9(d), Revised Rules of the Supreme Court.

■ Assignments of Error 4 through 14 are all concerned with the refusal of the trial court to give the general affirmative

charge requested by appellant in various forms, with and without hypothesis, addressed to the complaint as a whole and to each count. These assignments are related and will be considered together. Appellant argues that it was entitled to the affirmative charge because the appellees failed to prove that the insurance policy sued on was issued and delivered during the lifetime of the insured. The appellees deny appellant's contention and further attack the form of the requested affirmative charges with the hypothesis, "if you believe the evidence". Appellees argue that the hypothesis in such charges must be, "if you are reasonably satisfied from the evidence". We have heretofore held and now reaffirm that the language of the hypothesis, "if you believe the evidence" is proper in an affirmative charge. General Finance Corp. v. Bradwell, 279 Ala. 437, 186 So.2d 150; Hatcher v. Camp, 279 Ala. 475, 187 So.2d 232; Stewart Bros. v. Ransom, 204 Ala. 589, 87 So. 89. Hence the form of the appellant's requested affirmative charges was satisfactory.

Appellant's argument that it was entitled to the general affirmative charge is based on its position that the policy was not issued or delivered until April 24, 1970, a day after the death of the insured. But, as indicated above, there was conflicting testimony as to the date of the issuance of the policy and as to whether it was constructively delivered prior to the death of the insured. Without further recounting the evidence we find in the record substantial competent evidence which with all reasonable inferences to be drawn therefrom is sufficient to support both the court's action in submitting the issues to the jury and the resolution by the jury of such issues in favor of the appellees. Accordingly we hold that the trial court did not err in refusing to give the affirmative charges requested by appellant or in refusing to grant a new trial to appellant on the ground that the evidence was insufficient to support the jury verdict.

We will now consider appellant's Assignment of Error 15 which questions the propriety of the giving of appellee's Charge 4. This charge deals with constructive delivery of an insurance policy and in view of the conflict in the testimony as to the date of delivery we think that the charge substantially covered the issue submitted to the jury on the question as to such delivery, vel non. If the charge was lacking in clarity or comprehensiveness from appellant's viewpoint, its remedy was to request explanatory charges. Having failed to make such request appellant is not entitled to a reversal on account of the giving of the charge.

Assignments 24 and 25 challenge the ruling of the trial court, over objection of appellant, permitting Benny Roberts to testify as to what he told Mayo was the telephone message which Epperson left with Roberts' secretary during Roberts' absence from his office. We note that the court in admitting the testimony instructed the jury that the truth of Epperson's message was out and that the testimony was admitted only to show what Roberts told Mayo as a part of their conversation. We see no error in this ruling of the trial court.

Appellant's Assignments of Error 18 through 23 deal with the trial court's refusal to admit into evidence the three telegrams from Life and Casualty Insurance Company of Tennessee, dated respectively April 9, April 15 and April 20, 1970, pertaining to reinsurance of the proposed coverage on the three partners. These telegrams (identified as Defendant's Exhibits Three, Four and Five respectively) were offered in connection with the testimony of Roy Epperson denying the April 23rd telephone statements, attributed to him by the testimony of Benny Roberts, that James L. Roberts was covered by insurance and that the reinsurance carrier was on the risk. One of the principal issues in the case was whether Epperson did or did not in fact make those statements

which he denied making. With the testimony of Epperson and Roberts in direct conflict the jury was faced with the necessity of believing one and disbelieving the other. In view of this state of the evidence we think the telegrams were admissible as tending to show the existence of a motive in Epperson not to have made the alleged statements. Utterances or documents tending to show motive are not violative of the hearsay rule. In Volume 1 of McElroy's Law of Evidence in Alabama, section 45.01(1), page 92, it is stated:

"  *  *  *  On an issue whether a person did a specified act  *  *  *  evidence of a motive in him to do or not to do such act is admissible. As tending to show the existence of a motive in him to do or not to do such act, proof may be made of circumstances external to him that are calculated to create such motive, and proof may be made of his own conduct, whether words or dumb acts, tending to show the existence in him of such motive. Wigmore, sec. 389.

\*  \*  \*  \*  \*  \*

"The courts have said that every fact from which a motive could arise is provable; that with respect to the grounds from which a motive may be inferred . . . the law has never limited them and never can limit them in number or kind'; and that no matter what the fact may be 'if it can create a motive for the act, it may go to the jury'. Johnson v. State, 17 Ala. 618.

\*  \*  \*

"Proof of a person's motive to do an act is admissible even though such proof is weak and inconclusive. McClendon v. State, 243 Ala. 218, 8 So.2d 883."

And in Volume 2 of Law of Evidence in Alabama, section 273.02 at page 342, we find the following:

"*  *  *  If it is material to prove that a person at a specified time had  *  *  *  a specified motive to do or not to do  *  *  *  proof that a statement

was made to him prior to the time in question which was reasonably calculated to create, and which is offered for the purpose of showing, such  *  *  *  motive  *  *  *  is not violative of the Hearsay Rule. Wigmore, sec. 1788–1789  *  *  *."

In dealing with the theory of "motive" Wigmore on Evidence, Third Edition, Volume II, page 328, § 389, provides:

"  *  *  *  It must be remembered that this mode of argument is equally available in civil as well as in criminal cases. One is perhaps apt to think of 'motive' as a matter involved in criminal cases only. But a recollection of the process involved—that of inferring the existence of some emotion, from which in turn the doing of an act is to be inferred—shows that this process may be equally a feature of proof in civil cases, though not as frequently as in criminal cases."

■  We hold that the refusal of the trial court to admit the telegrams in evidence was reversible error.

For the reasons stated above we think the witness Epperson should have been allowed to testify that part of the insurance had been referred to its reinsurer.

■  We think the trial court ruled correctly in refusing to permit appellant's counsel to comment to the jury the failure of appellees to offer the testimony of Harold Mayo. We note from the record that this witness was equally available to all parties to the suit and under such circumstances we think it improper for either party to comment on the failure of the other party to offer such testimony.

For the reasons stated above, the case must be reversed and the cause remanded for a new trial.

Reversed and remanded.

HEFLIN, C. J., and MERRILL, HARWOOD and MADDOX, JJ., concur.